```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                        EASTERN DIVISION
```

Yusuf Brown,                      :

    Plaintiff,                  :   Case No. 2:07-cv-0826

    v.                          :   JUDGE FROST

Terry Collins,                    :   MAGISTRATE JUDGE KEMP

    Defendant.                  :


                      REPORT AND RECOMMENDATION

    The plaintiff in this 42 U.S.C. §1983 case is Yusuf Brown, who is currently serving a prison sentence at the Southern Ohio Correctional Facility located in Lucasville, Ohio.  In an amended complaint which was filed after his initial complaint was dismissed, Mr. Brown takes issue with a number of things that either have happened to him, or might happen to him, after he was transferred to his current institution.  The only defendant he names in the amended complaint is Terry Collins, who is the director of the Ohio Department of Rehabilitation and Correction. Director Collins has moved to dismiss the complaint.  For the following reasons, the Court will recommend that some of the claims in the amended complaint be dismissed but that Mr. Brown should be allowed to proceed on others.

                                           I.

    A motion to dismiss under Fed. R. Civ. P 12(b)(6) should not be granted if the complaint contains "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S.Ct 1955, 1974 (2007). All well-pleaded factual allegations must be taken as true and be construed most favorably toward the non-movant. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  A 12(b)(6) motion to dismiss is directed solely to the complaint and any exhibits attached to it.  Roth Steel

Products v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir. 1983). Rule 12(b)(6) must be read in conjunction with Fed. R. Civ. P. 8(a), which provides that a pleading for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The moving party is entitled to relief only when the complaint fails to meet this liberal standard. Id. And, of course, when the plaintiff is not represented by an attorney, the Court must construe the complaint liberally in favor of the plaintiff. Haines v. Kerner, 404 U.S. 519 (1972). It is with these standards in mind that the motion to dismiss will be decided.

II.

Mr. Brown's original complaint dealt mostly with issues which arose when he was transferred to the SOCF. Mr. Brown has been in protective custody inside the prison system because he has provided information against other inmates. He was also separated from some of those inmates when he was transferred to other prisons such as Toledo or Marion. When he was sent to the SOCF in 2006, some of the inmates he had previously been separated from were in that prison. He claimed in his original complaint that he and other protective custody inmates faced an increased risk of being assaulted by other inmates because they had been sent to a prison housing some of those inmates.

In his amended complaint, he does not limit his allegations to the risk he faces by being in the same prison with other inmates who have reasons for wanting to hurt him. Although he does claim that the risk of harm is still there, he also says that other things happened both because he was transferred to the SOCF and after he got there. The Court will divide his claims up into two different categories because each type of claim he makes has to be discussed separately. The description of each set of claims comes from the amended complaint. The Court is required to assume, at this stage of the case, that what Mr. Brown has said in that complaint is true.

A.   The "Failure to Protect" claim.

Mr. Brown supplied information to prison officials about drug trafficking at SOCF in 1998 and about inmates making weapons at the Toledo Correctional Institution in 2004.  On each of these occasions, he was sent to a different institution (first the Warren Correctional Institution, and later the prison in Marion) for his protection.

On July 7, 2006, he was transferred to the SOCF from Marion.  His move was ordered by Director Collins, who decided that all inmates in protective custody would be transferred to that institution.  As a result, Mr. Brown now shares a prison with some staff members who were involved in some way with his prior revelation of drug trafficking there, some inmates against whom he gave information, and "gang affiliated associates" of those inmates.  Amended complaint, ¶6.  He was even placed in the same unit with inmates from Toledo that he had given information against.  One of the corrections officers at SOCF told members of the Aryan Brotherhood, a prison gang, that Mr. Brown had informed on them, and they have made death threats to him.  He believed that at one point the Aryan Brotherhood was poisoning his food.  It took several months for him to have testing for abdominal symptoms.  He has reported additional illegal activity at the SOCF but in some cases no action has been taken about it.  He has written many letters to Director Collins about his situation.

B.   The "Conditions and Medical Treatment" claims.

Mr. Brown has also made some claims that may or may not be part of his claim that he has received poor treatment because he has provided information about inmates and staff in the past.  For example, he alleges that some of his property was stolen on two different occasions.  He also says that his medicine was taken away from him by a prison doctor who had never seen his medical file.  He was not given warm clothing to wear during an episode of unusually cold weather.  He was not allowed to see a doctor even after he had become very ill and passed out for

-3-

eating what he concluded was poisoned food.  He got an x-ray of, but no treatment for, an injured hand that was caught in the crash gate of a transport van.  He was charged with possessing contraband on the basis of a letter that he was never allowed to see.  Finally, someone was checking books out of the library in his name.  He has also written many letters to Director Collins about these incidents.

    C.  <u>Relief</u>.

The first thing Mr. Brown has asked the Court to do is declare that his transfer to the SOCF and the anguish it has caused him violates the Eighth Amendment.  He also asks the Court to arrange his transfer to another prison.  Finally, he requests an award of both compensatory and punitive damages.

III.

In his motion to dismiss, Director Collins makes four arguments.  They are:

    (1) That the complaint does not allege Director Collins' personal involvement in any of the things that happened to Mr. Brown;

    (2) That Mr. Brown has not suffered an "Article III" injury and therefore does not have standing to raise any of his claims;

    (3) That Mr. Brown does not have a federal constitutional right to be placed (or not to be placed) at any specific state prison; and

    (4) That Director Collins is entitled to qualified immunity because, first, Mr. Brown has not pleaded a violation of his constitutional rights, and, second, even if he has, a reasonable person in Director Collins' position would not know, based on the current state of the law, that Mr. Brown's rights were being violated.

    A.  <u>Personal involvement</u>.

The Court first observes that this defense applies mainly to Mr. Brown's claim for money damages.  He also wants both injunctive and declaratory relief.  As the Court of Appeals for

the Eleventh Circuit has said, "Personal action by defendants individually is not a necessary condition of injunctive relief against state officers in their official capacity. All that is required is that the official be responsible for the challenged action." Luckey v. Harris, 860 F.2d 1012, 1015 (11th Cir. 1988). Because, at least according to the amended complaint, Director Collins was responsible for sending Mr. Brown to the SOCF and has the power to send him elsewhere, the Director's lack of personal involvement in many of the other things alleged in the complaint does not justify dismissing Mr. Brown's claims for injunctive and declaratory relief. It is equally true, however, that money damages cannot be awarded against Director Collins for any actions alleged in the amended complaint which he did not personally perform or direct. See Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999); Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984).

    Mr. Brown does not claim that Director Collins worked at the SOCF when any of the things described in the amended complaint occurred. He also does not claim that Director Collins was involved directly in any of those events, at least before or during the time they occurred. The closest he comes to pinning responsibility on Director Collins for the specific things he complains about is with his allegation that, after things happened, he wrote letters to Director Collins describing these events, or filed grievances that must have come to the Director's attention. Under 42 U.S.C. §1983, these kinds of allegations are not enough to plead a claim for damages against a state official in his or her individual capacity. An official is liable under that statute only for his or her own actions. Being told about a constitutional violation after it happens, and not taking any action to fix the problem, is just not enough. As the court said in Stewart v. Taft, 235 F.Supp.2d 763, 767 (N.D. Ohio 2002) "supervisory liability under §1983 cannot attach where the allegation of liability is based upon a mere failure to act."

-5-

For the most part, that is all that Mr. Brown says Director Collins did.

There is one exception to this. Mr. Brown does allege that when Director Collins decided to send him back to the SOCF in 2006, he was well aware that he was reuniting Mr. Brown with people who might want to harm him. Director Collins nonetheless signed the transfer order. That is something he did directly. Whether that order violated Mr. Brown's rights is a separate issue from whether Director Collins was personally involved in issuing it. The amended complaint says he was. Consequently, the Director, in addition to being properly named as a person who can be the subject of injunctive relief, cannot escape liability for damages on this claim based on the defense of "no personal involvement."

    B. <u>Standing</u>.

Article III of the United States Constitution permits a federal court to resolve only "cases" and "controversies." The federal courts have interpreted those words to be a requirement that a party bringing a lawsuit allege that he or she was injured in some tangible or intangible way by the other party's actions. Without such an injury (and the ability of the federal courts to provide a remedy that eliminates the injury or compensates the injured party in some way), the party who has sued is said to lack "standing" to bring the action because there is no real case or controversy between the parties. <u>See Allen v. Wright</u>, 468 U.S. 737 (1984). Director Collins argues that Mr. Brown lacks standing to bring all of his claims because he has not been injured (at least in the constitutional sense) by any of the events described in the amended complaint.

This argument requires little discussion. Clearly, Mr. Brown has claimed a real injury from many of the things he describes in the amended complaint, including the lack of medical attention and the theft or destruction of his property. The argument that because Mr. Brown received some medical attention

-6-

after he became ill or was injured (even if not as comprehensive or as prompt as he wanted), he lacks standing, confuses what is an "injury in fact" sufficient to satisfy Article III with the elements of a cause of action under §1983 premised upon the Eighth Amendment. However, because Mr. Brown has not stated that Director Collins was involved in the medical or property issues, these claims should be dismissed for that reason.

The only substantial standing issue relates to Mr. Brown's claim that he has been threatened with injury because he is being housed with people who wish him ill. Director Collins claims that merely being placed in harm's way is not an Article III injury. That is simply incorrect. As the Court in Heisler v. Kralik, 981 F.Supp. 830, 837 (S.D.N.Y. 1997) stated, "prison officials have a constitutional duty to act reasonably to ensure a safe environment for a prisoner when they are aware that there is a significant risk of serious injury to that prisoner. The failure to do so violates that prisoner's rights, whether or not an attack actually occurs...." True, Congress has severely restricted, if not outright eliminated, an inmate's right to sue for damages in the absence of a real physical injury, see 42 U.S.C. §1997e(e), but that statute does not prohibit a court from granting injunctive or declaratory relief when an inmate is placed at great risk of injury even if the injury has not happened yet. See, e.g., Stephens v. Correctional Med. Services, 2006 WL 2734432, *7 n.3 (W.D. Ky. September 21, 2006) ("it is possible that Plaintiff might have been able to pursue injunctive relief notwithstanding the lack of physical injury"); Harper v. Showers, 174 F.3d 716, 719 n.7 (5th Cir. 1999) ("prisoner who cannot seek damages for mental suffering because of § 1997e(e) still can seek injunctive relief"). Further, Mr. Brown does allege that he has been poisoned by members of the Aryan Brotherhood because he provided information against their associates. That is certainly a real injury, if in fact it happened.

The question which Director Collins raises in his standing argument is not whether Mr. Brown has alleged all of the elements of a claim for injunctive relief or damages under the Eighth Amendment.  It is simply whether any inmate who claims to be injured by being placed unnecessarily in harm's way, and who claims to have been poisoned on at least one occasion, has standing to raise an Eighth Amendment claim.  The cases clearly say that such standing exists.

    C.  <u>The right to a specific institutional placement</u>.

Mr. Brown has asked for a transfer from SOCF.  Director Collins argues, correctly, that it is pretty much up to the Department of Rehabilitation and Correction to decide where to place its inmates.  Although that is a true statement, the ODRC does not have the unfettered right to place inmates in constitutionally questionable environments.  If, in fact, Mr. Brown is living at an institution where the threat to his personal safety is so great that his Eighth Amendment rights are being violated, it is no defense to his claims to say that the ODRC was allowed to designate him to that institution.  Assuming that what Mr. Brown has said about the risk to him is true, either his living conditions at the institution must be changed, or he must be transferred to a safer prison.  In any event, his complaint cannot be dismissed simply because ODRC enjoys a certain amount of latitude in deciding where any individual inmate should be housed.

    D.  <u>Qualified immunity</u>.

State officials can be held liable for damages under §1983 only if their actions run afoul of the law as it has been "clearly established" by applicable precedent.  There are at least two parts to this inquiry.  First, was there any constitutional violation at all?  Second, if so, was the law so clear when the violation occurred that a reasonable state official would have known his or her actions were unlawful?  If the answer to either question is no, the state official is not

liable for damages. However, the Supreme Court has said that the first question must be answered first even if the answer to the second question is obviously no. See Wilson v. Layne, 526 U.S. 603 (1999). It is also important to note that this defense has nothing to do with whether Mr. Brown can get either declaratory or injunctive relief - it applies only to claims for money damages. See Flagner v. Wilkinson, 241 F.3d 475, 483 (6th Cir. 2001) ("The defense of qualified immunity protects officials from individual liability for money damages but not from declaratory or injunctive relief").

Director Collins argues that Mr. Brown's amended complaint does not describe an injury to Mr. Brown's constitutional rights because (1) he does not allege Director Collins' personal involvement in any of the events he describes, and (2) "as shown herein [meaning in the motion to dismiss], he has failed to state any claim for a constitutional violation." Defendant's motion, at 9. The Court has already addressed the issue of personal involvement and concluded that it requires dismissal of some, but not all, of Mr. Brown's claims. The second part of this argument appears to refer to the standing issue. That has also been addressed. There is a potential constitutional claim raised here about Mr. Brown's safety. Consequently, the Court must decide if (again, based solely on Mr. Brown's version of the facts) a reasonable state official should have known that it violates the constitution to place an inmate in a situation where he might be injured or killed by other inmates because he has informed on them in the past.

The United States Supreme Court clearly stated in Farmer v. Brennan, 511 U.S. 825 (1994), a case decided more than fourteen years ago, that prison officials have a duty to protect prisoners from assaults by other prisoners. That decision went on to say that, in order for the Eighth Amendment to be violated, there must be a real and substantial risk to the inmate's safety, and the prison official in question must have been aware of the risk

and have been deliberately indifferent to it.  Nevertheless, if those elements are present, it has been clear for more than a decade that deliberately or recklessly placing an inmate in a situation where he or she is very likely to be seriously injured violates the Eighth Amendment.

Director Collins does not directly assert that this law is not clearly established.  Rather, he has made the same arguments here as he has before - that he cannot be held liable for matters in which he was not personally involved and that he cannot be held liable to a plaintiff whose legal rights have not been injured.  Again, those assertions are true as far as they go, but they do not really support his defense of qualified immunity to any greater extent than they independently support (or fail to support) his request to have the case dismissed for these same reasons.

IV.

The Court concludes that Mr. Brown's amended complaint does not allege Director Collins was personally involved in anything alleged in that complaint other than the decision to transfer Mr. Brown to the SOCF and, as part of that decision, not to protect him from a serious risk of harm posed by other inmates.  The Court therefore recommends that Director Collins' motion to dismiss (#19) be granted in part and that all claims other than the "failure to protect" claim be dismissed.  Because none of the other arguments made by Director Collins justify the dismissal of the "failure to protect" claim, the Court recommends that his motion to dismiss that claim be denied.  If this recommendation is adopted, Director Collins' motion to stay discovery (#22) would be moot and should also be denied.

V.

PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within ten (10) days of the date of this

Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

                                /s/ Terence P. Kemp
                                United States Magistrate Judge